1

2

3

4

5

6

7

8                    IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   BERNARD LEROY MACCARLIE,

11              Petitioner,                    No. CIV S-00-1830 LKK DAD P

12        vs.

13   GAIL LEWIS,

14              Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16              Petitioner is a state prisoner proceeding by counsel with a petition for writ of

17   habeas corpus.  This case is one of five that have been related for administrative purposes.  On

18   September 9, 2005, the cases came before the court for hearing of respondents' motions to

19   dismiss the petitioners' amended petitions as containing untimely claims that do not relate back

20   to claims that were timely filed.  Glenn R. Pruden appeared for the moving parties.  Margaret

21   Littlefield appeared telephonically for petitioner MacCarlie.  The parties' arguments were heard,

22   and the motions was taken under submission.  For the reasons set forth below, the undersigned

23   will recommend that respondent's motion be granted.

24                              PROCEDURAL HISTORY

25              On October 2, 1991, Gary Summar was murdered in Trinity County.  On

26   December 16, 1991, Robert Bond, Leafe Dodds, Robert Fenenbock, Ernest Knapp, Anthony

1

Lockley, and Bernard MacCarlie were arraigned in Trinity County Superior Court on charges of participating in the murder.  On October 5, 1992, Barbara Adcock, Cherri Frazier, and Sue Hamby were also arraigned in Trinity County on charges of participating in the murder.

Pretrial litigation in the Trinity County Superior Court lasted through September 1993.  During this time, motions for multiple juries, motions to determine the competence of a key government witness, motions for severance, motions for change of venue, motions to dismiss or demur, and other motions were resolved in the Trinity County Superior Court.  On August 16, 1993, the court ruled that there would be four separate trials, with two trials involving dual juries to be conducted in Solano County Superior Court and two additional trials to be conducted in either Stanislaus or San Joaquin County.  Subsequently, however, Ernest Knapp was dismissed as a defendant, and the remaining defendants were prosecuted in three rather than four trials.

The first two trials were conducted in Solano County, while the third was conducted in Contra Costa County.  All three trials were prosecuted by Robert Maloney, a special prosecutor appointed to the case.  Defendants Hamby, Fenenbock, and Frazier were tried in the first trial, which began on November 15, 1993, and concluded on February 4, 1994; judgment was entered on March 16, 1994.  Defendants Bond, MacCarlie, and Dodds were tried in the second trial, which commenced in September 1994; judgment was entered on January 20, 1995. The trial of defendants Adcock and Lockley was conducted in 1995.

I. <u>Petitioners Hamby, Fenenbock, and Frazier</u>

In the first trial, defendant Fenenbock was convicted of first degree murder, with enhancements for use of a weapon and infliction of great bodily injury, but was acquitted of conspiracy to commit murder.  Defendants Hamby and Frazier were convicted of conspiracy to commit murder but were acquitted of murder.

On appeal, defendant Fenenbock raised seven claims, alleging there was insufficient evidence to support his conviction, two jury instructions were erroneous, several errors stemming from the testimony of child witness Randy Hogrefe, and the trial court

erroneously allowed rebuttal witnesses.  Defendant Hamby joined in the claims raised by defendants Fenenbock and Frazier and raised additional claims concerning jury instructions and trial court error with regard to rebuttal evidence.  Defendant Frazier joined in the claims raised by defendants Hamby and Fenenbock and raised additional claims concerning jury instructions and her sentence.  Defendant Frazier also filed a state habeas petition claiming ineffective assistance of trial counsel.

In a partially published opinion filed on July 1, 1996, <u>People v. Fenenbock, et al.</u>, 46 Cal. App. 4th 1688 (1996), the California Court of Appeal for the First Appellate District affirmed the judgments of conviction entered against defendants Hamby, Fenenbock, and Frazier and denied defendant Frazier's habeas petition.  On October 2, 1996, the California Supreme Court denied review.  The defendants did not file petitions for certiorari in the United States Supreme Court.

On January 31, 1997, Sue Hamby filed a pro se federal habeas petition raising two claims.  The respondent filed an answer to her petition on April 11, 1997, and a pro se traverse was filed on May 14, 1997.  On September 12, 1997, Robert Fenenbock filed a pro se federal habeas petition raising seven claims, and on November 20, 1997, Cherri Frazier filed a pro se federal habeas petition raising two claims.  On December 4, 1997, the Federal Defender was appointed to represent petitioner Fenenbock.  The Hamby, Fenenbock, and Frazier cases were related for administrative purposes on December 24, 1997, and the Federal Defender was appointed to represent petitioners Hamby and Frazier.  Jolie Lipsig subsequently substituted in as counsel for petitioner Fenenbock, and Janice Lagerlof substituted in as counsel for petitioner Hamby.  At the initial status conference held on February 26, 1998, the undersigned granted the first of many continuances requested by petitioners for the purpose of obtaining and reviewing the voluminous records of their trial and of the two subsequent trials.  On March 16, 1999, the California Court of Appeal filed its decision in the consolidated appeals of co-defendants Bond, MacCarlie, Adcock, and Lockley.  Petitioners Hamby, Fenenbock, and Frazier were eventually

1   ordered by the undersigned to file amended petitions and any accompanying motions by May 1,

2   2000.  However, on April 5, 2000, petitioners moved for leave to conduct discovery regarding

3   claims not yet presented to any court.  The motion was denied, and further continuances were

4   granted.

5           On September 24, 2001, petitioners moved to hold their federal proceedings in

6   abeyance.  Petitioners indicated their intention to file state exhaustion petitions by November 16,

7   2001.  In opposition, respondents argued that the statute of limitations had expired and any new

8   claims would be untimely.  In findings and recommendations filed November 1, 2001, the

9   undersigned recommended that petitioners' joint motion be granted and that all petitioners be

10  required to file a motion for leave to amend or an amended federal habeas petition within thirty

11  days after disposition of their state habeas petitions.  The findings and recommendations were

12  adopted on December 4, 2001, and the Hamby, Fenenbock, and Frazier cases were stayed.

13  II.  Petitioners Bond and MacCarlie

14          In the second trial in the Solano County Superior Court, defendant Dodds was

15  acquitted of all charges.  Defendant MacCarlie was convicted of conspiracy to commit murder,

16  two counts of kidnaping, mayhem, and assault with a deadly weapon, plus enhancements for use

17  of a weapon and infliction of great bodily injury, but the jury was unable to reach a verdict on the

18  charge of murder.  The trial court declared a mistrial on the murder charge against defendant

19  MacCarlie.  Defendant Bond's separate jury was also unable to reach a verdict on the charge of

20  murder, and a mistrial was declared to that count.  Defendant Bond was convicted of conspiracy

21  to commit murder and acquitted of the remaining charges.

22          On appeal, defendant Bond claimed that there was insufficient evidence of

23  conspiracy to commit murder, the trial court erroneously instructed the jury on the requisite intent

24  for conspiracy, and the trial court failed to require the jury to determine whether petitioner

25  conspired to commit first or second degree murder.  Defendant Bond joined in all applicable

26  arguments raised by defendant MacCarlie.  Defendant MacCarlie argued on appeal that (1) the

4

1  trial court erroneously instructed the jury on the requisite intent for conspiracy, lesser included

2  offenses to conspiracy to commit murder, and heat of passion; (2) trial counsel was ineffective

3  because he failed to request instructions on lesser included offenses to conspiracy to commit

4  murder; (3) the trial court erred by taking partial verdicts before replacing a juror who had

5  become ill; and (4) the trial court erroneously calculated presentence credits.

6         In an unpublished opinion filed March 16, 1999, the California Court of Appeal

7  for the First Appellate District affirmed the convictions of defendants Bond and MacCarlie but

8  remanded for modification of defendant MacCarlie's presentence credits.  On June 30, 1999, the

9  California Supreme Court denied review.  Neither defendant Bond nor defendant MacCarlie filed

10  a petition for certiorari in the United States Supreme Court.

11         On October 29, 1999, Robert Bond filed a pro se federal habeas petition alleging

12  that there was insufficient evidence of conspiracy to commit murder and that the jury instructions

13  on conspiracy to commit murder violated due process.  The Federal Defender was appointed to

14  represent petitioner Bond, and the case was set for a status conference.  Lindsay Anne Weston

15  substituted in as counsel for petitioner Bond.  The court declined to relate the Bond case to the

16  Hamby, Fenenbock, and Frazier cases.  Several continuances were thereafter granted in the Bond

17  case.

18         On August 23, 2000, Bernard MacCarlie filed a pro se federal habeas petition

19  alleging that the jury instructions on conspiracy to commit murder violated due process, the

20  failure to give instructions on conspiracy to commit second degree murder violated due process

21  and ex post facto laws, trial counsel was ineffective for failing to request an instruction on

22  conspiracy to commit second degree murder, the trial court's failure to instruct on heat of passion

23  violated due process and ex post facto laws, and the verdict was coerced as a result of the court's

24  taking partial verdicts before a juror was excused for illness.  Petitioner MacCarlie's application

25  to consolidate his case with petitioner Bond's was denied.  The court appointed the Federal

26  Defender to represent petitioner MacCarlie and set the case for a status conference.  Margaret

1  Littlefield substituted in as counsel for petitioner MacCarlie.  Thereafter, several continuances

2  were granted at the request of counsel for the various petitioners.

3           A status conference was held in the Bond and MacCarlie cases on October 26,

4  2001, and a scheduling conference was set for January 18, 2002.  The Bond and MacCarlie cases

5  were related to the Hamby, Fenenbock, and Frazier cases for administrative purposes on

6  December 12, 2001.  On January 18, 2002, a deadline was set for the filing of abeyance motions

7  by petitioners Bond and MacCarlie.  The motions were filed, and respondents opposed them on

8  the ground that the statute of limitations had expired and any new claims would be untimely.  In

9  findings and recommendations filed April 23, 2002, the undersigned recommended that

10  petitioners' motions be granted and that each petitioner be required to file an amended federal

11  habeas petition within thirty days after disposition of their state habeas petitions.  The findings

12  and recommendations were adopted on May 20, 2002, and the Bond and MacCarlie cases were

13  stayed.

14  III. Further State Court Proceedings

15           On November 26, 2001, petitioner Hamby filed a habeas petition in the California

16  Supreme Court raising nine claims, and petitioner Frazier filed a petition raising fifteen claims.

17  On December 10, 2001, petitioner Fenenbock filed a petition raising nine claims.  On July 19,

18  2002, petitioner MacCarlie filed a petition raising ten claims.  On August 20, 2002, petitioner

19  Bond also filed a petition raising ten claims.  In a single order filed June 25, 2003, the California

20  Supreme Court denied the exhaustion petitions filed by all five petitioners.

21  IV. Further Federal Court Proceedings

22           On various dates after August 4, 2003, four of the five petitioners filed amended

23  habeas petitions as a matter of right.  Petitioner Fenenbock's amended petition alleges ten claims,

24  including the seven raised in his original petition.  Petitioner Frazier's amended petition alleges

25  sixteen claims, including the two raised in her original petition.  Petitioner Bond's amended

26  petition alleges twelve claims, including the two raised in his original petition.  Petitioner

1   MacCarlie's amended petition alleges fourteen claims, including the five raised in his original

2   petition.  Because the respondent previously filed an answer to petitioner Hamby's original

3   petition, petitioner Hamby filed a motion for leave to amend.  Respondent stipulated to the filing

4   of petitioner Hamby's amended petition while reserving the right to raise a statute of limitations

5   defense to any untimely claims.  Petitioner Hamby's amended petition alleges eleven claims,

6   including the two raised in her original petition.

7           On December 5, 2003, respondents filed their first motions to dismiss petitioners'

8   newly added claims as barred by the statute of limitations.  The Ninth Circuit subsequently ruled

9   that the transaction or occurrence at issue in a federal habeas petition for purposes of Rule 15(c)

10  is the petitioner's state trial and conviction and that all new claims alleged in an amended petition

11  relate back to the date of filing the original petition and thereby avoid the one-year statute of

12  limitations.  Felix v. Mayle, 379 F.3d 612 (9th Cir. 2004).  The undersigned recommended that

13  respondents' motions to dismiss be denied, and the findings and recommendations were adopted

14  on October 1, 2004.

15          On January 4, 2005, respondents moved to stay these proceedings pending

16  Supreme Court action in Felix v. Mayle.  Respondents' motions were heard and denied on

17  February 4, 2005, but respondents were granted six months to respond to the amended petitions.

18  On June 23, 2005, the Supreme Court held that new claims alleged in an amended habeas

19  petition do not relate back to the date of the original petition if the new claims are supported by

20  facts that differ in time and type from those set forth in the original petition.  Mayle v. Felix, 545

21  U.S. 644, 125 S. Ct. 2562 (2005).  Respondents renewed their motions to dismiss in light of the

22  Supreme Court's decision with those motion being filed on August 4, 2005.

THE PARTIES' ARGUMENTS

23

24  I.  Respondent's Motion to Dismiss

25          Respondent moves to dismiss petitioner MacCarlie's amended petition on the

26  ground that it contains claims that are untimely under the AEDPA statute of limitations and do

7

1  not relate back to claims that were timely filed.  Respondent asserts that petitioner was aware at

2  all times of respondent's intention to oppose petitioner's newly exhausted claims as untimely, yet

3  petitioner did not include in his amended petition any reasons why the new claims should not be

4  dismissed as time barred.  Respondent acknowledges that petitioner offered such reasons in

5  opposition to respondent's first motion to dismiss, but respondent declines to assume petitioner

6  will rely on the same reasons in opposing the renewed motion to dismiss.

7          Respondent contends that all nine of the new claims alleged in petitioner

8  MacCarlie's amended petition, specifically Claims 1 through 8 and Claim 14, are untimely.

9  Respondent sets forth a history of petitioner's proceedings in state and federal court, including

10  the following key dates:

| | |
|---|---|
| June 30, 1999 | California Supreme Court denied review on direct appeal |
| September 28, 1999 | State court judgment became final upon expiration of the time to file a petition for certiorari in the United States Supreme Court |
| August 23, 2000 | Federal habeas petition filed, alleging five claims |
| September 28, 2000 | One-year period of limitation expired |
| July 19, 2002 | First state habeas petition filed in California Supreme Court, alleging ten claims |
| June 25, 2003 | California Supreme Court summarily denied the habeas petition |
| August 25, 2003 | Petitioner filed an amended federal habeas petition alleging fourteen claims, including the five original claims, now designated claims 9 through 13 |

20          Respondent points to the date on which petitioner's judgment became final, the

21  date on which the statute of limitations expired, and the date, almost three years after the statute

22  of limitations expired, on which petitioner filed his amended federal habeas petition raising new

23  claims.  Respondent concludes that she has met her burden to plead and prove that petitioner's

24  new claims are untimely and that the amended petition must be dismissed unless petitioner can

25  meet his burden of establishing a factual basis for tolling the statute in some way that will

26  circumvent the limitations period for him.  Respondent compares each of petitioner's new claims

8

1  with those alleged in petitioner's initial federal habeas petition and contends that not one new

2  claim relates back to any claim alleged in the original, timely pleading.  With regard to Claim 14,

3  alleging cumulative error, respondent also argues that the Supreme Court has not recognized the

4  availability of habeas relief for such a claim and that relief on that ground is <u>Teague</u>-barred.

5  II.  <u>Petitioner's Opposition</u>

6         Petitioner MacCarlie asserts that respondents' motion to dismiss is not well taken

7  and should be denied.  Petitioner presents two arguments in support of this assertion but further

8  asserts that respondent's motion should be denied for the reasons set forth by the petitioners in

9  the four related cases.  In this regard, petitioner does not discuss or cite any specific argument

10  advanced by any other petitioner.

11         A.  <u>Rule 15(c) Relation Back</u>

12         Petitioner argues first that Rule 15(c) permits the amended claims of one

13  "petitioner/plaintiff" to relate back to the claims of a "co-defendant and related

14  petitioner/plaintiff."  Petitioner contends that the advisory committee notes to the 1966

15  amendments to Rule 15(c) "strongly suggest" that amended claims may relate back to the claims

16  of other plaintiffs.

17         Petitioner cites the district judge's December 24, 1997 order, which related the

18  cases of petitioners Fenenbock, Hamby, and Frazier and stated that the three actions are based on

19  the same or similar claims, the same property, transaction or event, similar questions of fact, and

20  the same question of law, as well as the district judge's December 12, 2001 order, which related

21  the cases of petitioners Bond and MacCarlie to the cases of petitioners Hamby, Fenenbock, and

22  Frazier and stated that the five actions involve the same or similar claims, the same events,

23  similar questions of fact, and some of the same questions of law.

24         On the basis of the advisory committee notes to Rule 15, the court's related case

25  orders, and citations to a treatise and a case concerning the existence and involvement of a new

26  plaintiff, petitioner asserts that his new Claim 1 relates back to facts included in petitioner

Fenenbock's original Claim 4; his new Claim 2 relates back to facts included in petitioner

Fenenbock's original Claim 5; most of his new Claim 3 relates back to facts included in

petitioner Fenenbock's original Claims 4 and 7; his new Claim 5 relates back to one of petitioner

Hamby's original claims; and his new Claim 14, alleging cumulative error, relates back to the

claims cited in Claim 14.  Petitioner's Rule 15 argument makes no reference to his new Claims 4,

6, 7, and 8, or to the portions of his new Claim 3 that do not relate back to petitioner Fenenbock's

original Claims 4 and 7.

B. <u>Actual Innocence</u>

Petitioner MacCarlie argues next that the statute of limitations for all of his new

claims should be tolled because of his claim of actual innocence.  Petitioner does not dispute

respondent's contention that there is no definitive decision from the Ninth Circuit or the Supreme

Court whether there is an actual innocence exception to the AEDPA statute of limitations.

Rather, petitioner argues that logic, justice and the United States Constitution compel a

conclusion that the State has no legitimate interest in imprisoning a person who is actually

innocent and therefore an actual innocence exception must be recognized.

Petitioner asserts that he meets the gateway standard of <u>Schlup v. Delos</u>, 513 U.S.

298, 326-27 (1995), and that this court can therefore consider all claims raised in his amended

petition.  In response to respondent's attack on the sufficiency of his evidence of actual

innocence, petitioner refers to statements by Leafe Dodds and Michael Sutton that there was no

conspiracy and by Michael Sutton that the offense against the victim happened on the spur of the

moment.  Petitioner argues that this evidence alone demonstrates that the court cannot have

confidence in the outcome of petitioner's trial or, at a minimum, that petitioner is entitled to an

evidentiary hearing to show that he meets the gateway standard.

Petitioner concludes his actual innocence argument with the assertion that

petitioner Fenenbock's initial pro se petition asserted a claim of actual innocence and put

respondents on notice that all of the facts and occurrences in Fenenbock's trial and in the

separate trials of his co-defendants would be litigated in federal court.  Petitioner asserts that his

new Claim 6 relates back to the claim of actual innocence asserted in petitioner Fenenbock's

original petition.

III.  Respondent's Reply

    A.  Relation Back

        Respondent observes that petitioner cites no authority, other than a single Federal

Tort Claims Act case that is readily distinguishable, for the sweeping proposition that respondent

had notice of some of petitioner's new claims because similar claims were raised by separately

tried co-defendants in their own state appeals and federal habeas petitions.  Respondent asserts

that the plain language of Rule 15(c) contemplates relation back to the "conduct, transaction, or

occurrence set forth or attempted to be set forth in the original pleading," not to a different

pleading filed by a co-defendant.  Respondent argues that petitioner's reading of the rule would

not ensure effective notice to the state and would thwart the policy behind the AEDPA statute of

limitations.

        Respondent also argues that petitioner's analysis is flawed because petitioner

assumes that "notice" remains the touchstone of whether a claim relates back, as suggested by the

Ninth Circuit in Anthony v. Cambra, 236 F.3d 568 (9th Cir. 2000), but that such an assumption

does not appear to be viable in light of the Supreme Court's holding that, for purpose of a habeas

action, "the 'original pleading' to which Rule 15 refers is . . . the petition in a habeas

proceeding."  Mayle v. Felix, 125 S. Ct. at 2569-70.  Respondent notes that the Supreme Court

ruled that, "[s]o long as the original and amended petitions state claims that are tied to a common

core of operative facts, relation back will be in order."  Id. at 2574.

        Respondent asserts that petitioner's reliance on the court's related case orders is

misplaced because the findings in those orders were made pursuant to Local Rule 83-123(a),

which states that, for purposes of judicial economy, an action is "related" to another action and

both will be assigned to the same judge if "(1) both actions involve the same parties and are

11

based on the same or a similar claim; [and] (2) both actions involve the same property, transaction, or event."  Respondent observes that nothing in this rule suggests that the determination is based on the same considerations that lie behind Rule 15(c) and that logic does not compel such a conclusion from two rules with such disparate concerns.

    B. Actual Innocence

        With regard to petitioner's arguments concerning actual innocence, respondent argues that if there is an actual innocence exception to the AEDPA statute of limitations, Schlup requires the petitioner to support the claim of actual innocence with "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial" and to establish that "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt."  513 U.S. at 324, 327.  Respondent asserts that a court reviewing such a claim is entitled to consider "how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence."  Id. at 332.

        Respondent argues that the Sutton and Dodds statements relied upon by petitioner do not meet the Schlup standard.  Respondent asserts that Michael Sutton is alleged to have stated to a defense investigator prior to trial in 1993 that the killing "apparently" happened either in the "heat of the moment" or on the "spur of the moment," that the statement was included in a hearsay report of the interview and was raised during the Hamby-Fenenbock-Frazier trial, and that the trial court sustained the prosecutor's objection to the testimony and excluded it because it amounted to nothing more than Sutton's opinion.  Respondent argues that this evidence does not meet the standard set by Schlup because it is not reliable and, if petitioner intends to rely on additional information obtained from Sutton after trial, he should have submitted a declaration signed by Sutton.  Respondent notes that none of the petitioners in these five cases has presented such a declaration, despite the fact that petitioner Frazier asserts in her opposition that Sutton was interviewed on August 26, 2003.  Respondent cites the Supreme Court's observation in Herrera

v. Collins, 506 U.S. 390, 417 (1993), that affidavits signed long after trial or based on hearsay are "particularly suspect" and notes that in this case the petitioners have not provided even a suspect affidavit for the court's consideration.

With regard to a statement allegedly made by Leafe Dodds that there was no conspiracy, respondent notes that petitioner's amended petition cites an interview with Dodds by an investigator for the Federal Defender's Office in November 2001 and quotes specific statements allegedly made by Dodds at that time, apparently based on a report of the interview. Respondent notes that none of the petitioners has offered a copy of the report and argues that hearsay not even submitted in an affidavit fails to meet the Schlup standard. Respondent acknowledges that petitioner Fenenbock's amended petition includes as Exhibit 1 a declaration signed by Dodds in August 2002 but points out that this declaration does not repeat the statements allegedly made in 2001, i.e., Dodds' alleged statements that there was no indication that anything was going to happen to the victim and that when MacCarlie saw the victim he "just nutted up." In the declaration attached to petitioner Fenenbock's amended petition as Exhibit 1, Dodds declares only that when MacCarlie got out of the truck he "jumped out and started yelling at Hop," MacCarlie punched the victim several times in the face, and Dodds then left the scene. Respondents argue that the only Dodds declaration before the court says nothing at all about whether he believed there was a conspiracy and therefore fails to meet the Schlup test for credible evidence of petitioner MacCarlie's actual innocence. In addition, respondent discounts the likely credibility and probable reliability of any testimony Dodds might give on the grounds that he was a co-defendant who was acquitted and cannot be placed in jeopardy again for anything he now says about the murder and that Dodds has a bias in favor of a member of the Hawkins Bar campground community.

Respondent concludes that petitioner has failed to show and cannot show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable

/////

13

doubt and that petitioner is not entitled to an evidentiary hearing because his proffered evidence does not come close to qualifying as a gateway to overcome the statute of limitations.

ANALYSIS

In findings and recommendations filed in the five related cases on August 11, 2004, the undersigned recommended that respondents' first motions to dismiss be denied pursuant to Felix v. Mayle, 379 F.3d 612 (9th Cir. 2004).  Because the Felix decision was issued on August 9, 2004, the undersigned recognized that renewed motions to dismiss might be appropriate at a later time and therefore recommended that the motions to dismiss be denied without prejudice.  (See Findings and Recommendations filed Aug. 11, 2004, at 16.)  The findings and recommendations were adopted in full, and respondents' motions were denied without prejudice on September 30, 2004.

By order filed February 8, 2005, the undersigned directed the respondents to respond to the amended petitions by answer or motion to dismiss.  (See Order filed Feb. 8, 2005, at 3.)  Taking into consideration the fact that the Supreme Court had granted certiorari in Mayle v. Felix, the undersigned granted respondents six months to file and serve their responses.  On June 23, 2005, the Supreme Court reversed the Ninth Circuit's decision in Felix.  Mayle v. Felix, 545 U.S. 644, 125 S. Ct. 2562 (2005).  Respondents have properly renewed their motions to dismiss the amended petitions as containing claims that are untimely.  Arguments unrelated to the timeliness of petitioners' claims will not be considered by the court at this time and should be raised in answers responsive to the claims that are found to be timely.

I.  The Statute of Limitations

On April 24, 1996, the Antiterrorism and Effective Death Penalty Act ("AEDPA") was enacted.  The AEDPA amended 28 U.S.C. § 2244 by adding the following provision:

> (d) (1)  A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of –

/////

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d). The one-year AEDPA statute of limitations applies to all federal habeas corpus petitions filed after the statute was enacted and therefore applies to the present case, which was filed after April 24, 1996. See Lindh v. Murphy, 521 U.S. 320, 322-23 (1997).

In the present case, petitioner MacCarlie's judgment became final for purposes of 28 U.S.C. § 2244(d)(1)(A) on September 28, 1999, ninety days after the California Supreme Court denied review on appeal. See Bowen v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999). The one-year period of limitation began to run on September 29, 1999. Petitioner did not file any state petitions for collateral relief in the ensuing year. Accordingly, the one-year period of limitation ran without interruption until it expired on September 28, 2000.

It is undisputed that the pro se federal habeas petition received from petitioner MacCarlie on August 23, 2000, was timely filed. Petitioner's amended petition was filed by counsel on August 25, 2003, almost three years after the statute of limitations expired. Any new claims alleged in the amended petition are barred by the AEDPA statute of limitations unless some other statutory provision applies or the claims are rendered timely under some applicable

1   rule or doctrine.  Petitioner does not contend that any provision contained in § 2244(d)(1)(B),

2   (C), or (D) applies to any of his claims.

3   II.  Relation Back of New Claims

4   An application for a writ of habeas corpus "may be amended or supplemented as

5   provided in the rules of civil procedure applicable to civil actions."  28 U.S.C. § 2242.  See also

6   Rule 11, Fed. R. Governing § 2254 Cases (providing that the Federal Rules of Civil Procedure

7   may be applied in habeas corpus proceedings to the extent that the rules of civil procedure are not

8   inconsistent with any statutory provision or with the rules governing habeas cases); Fed. R. Civ.

9   P. 81(a)(2) (providing that the Federal Rules of Civil Procedure are applicable to proceedings for

10  habeas corpus "to the extent that the practice in such proceedings is not set forth in statutes of the

11  United States, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255

12  Proceedings").

13  Under Federal Rule of Civil Procedure 15(a), a habeas petitioner may amend his

14  pleadings once as a matter of course before a responsive pleading is served and may seek leave of

15  court to amend his pleading at any time during the proceeding.  Mayle v. Felix,  545 U.S. 644,

16  ___, 125 S. Ct. 2562, 2569 (2005).  Under Rule 15(c), a petitioner's amendments made after the

17  statute of limitations has run will relate back to the date of his original pleading if the new claims

18  arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the

19  original pleading.  Id. (citing Fed. R. Civ. P. 15(c)(2)).

20  In Mayle v. Felix, the Supreme Court explained that "[t]he 'original pleading' to

21  which Rule 15 refers is the complaint in an ordinary civil case, and the petition in a habeas

22  proceeding."  Id. at 2569-70.  The Court observed that the complaint in an ordinary civil case

23  need only provide fair notice of the plaintiff's claim and the grounds on which the claim rests,

24  while a habeas petition is required to specify all grounds for relief available to the petitioner and

25  state the facts supporting each ground.  Id. at 2570.  Because of this difference between civil

26  complaints and habeas petitions, the relation back of new habeas claims "depends on the

existence of a common 'core of operative facts' uniting the original and newly asserted claims." Id. at 2572.[1]  The common core of operative facts must not be viewed at too high a level of generality, and an "occurrence" will consist of each separate set of facts that supports a ground for relief.  Id. at 2573.  See also United States v. Ciampi, 419 F.3d 20, 24 (1st Cir. 2005) ("[A] petitioner does not satisfy the Rule 15 "relation back" standard merely by raising some type of ineffective assistance in the original petition, and then amending the petition to assert another ineffective assistance claim based upon an entirely distinct type of attorney misfeasance."), cert. denied ___U.S.___, 126 S. Ct. 2906 (2006).  Applying these principles in Mayle, the Court ruled that the petitioner's new claim did not relate back to his original claim because the new claim arose from the petitioner's own pretrial interrogation and was different in time and place from his original claim, which arose from the pretrial police interrogation of a witness.  Id. at 2572-73.

Neither the Supreme Court's analysis in Mayle nor the language of Rule 15 supports a conclusion that a new claim raised by a party in his amended pleading can relate back to a claim raised by another party in a separate pleading in the same action, much less to a claim raised by another party in a pleading in another action.  Rule 15(a) speaks repeatedly of "*a party*" amending "*the party's pleading*," and Rule 15(c) provides that "[a]n amendment of *a pleading* relates back to the date of *the original pleading* when . . . the claim or defense asserted in *the amended pleading* arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in *the original pleading*."  Fed. R. Civ. P. 15(a) and (c) (emphasis added).  Thus, in determining relation back pursuant to Rule 15(c), the only relevant pleadings are the party's original pleading and that same party's amended pleading.

While Rule 15(c) provides for relation back in three different circumstances, only one of the three provisions is applicable to habeas proceedings.  The rule, omitting only the

---

[1]  See Jackson v. Roe, 425 F.3d 654, 660 n. 8 (9th Cir. 2005) ("Instead, held the Court, an amended claim in a habeas petition relates back for statute of limitations purposes only if it shares a 'common core of operative facts' with the original claim.) (quoting Mayle v. Felix, 125 S. Ct. at 2574).

provisions concerning service of the United States or any agency or officer thereof for purposes

of Rule 15(c)(3), provides as follows:

> **(c) Relation Back of Amendments.**  An amendment of a pleading relates back to the date of the original pleading when
>> (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party. . . .

Fed. R. Civ. P. 15(c) (as last amended in 1993).

Rule 15(c)(1) does not apply to habeas proceedings because 28 U.S.C. § 2244(d),

i.e., "the law that provides the statute of limitations applicable to the action," does not include a

provision permitting relation back.

Rule 15(c)(2) is the provision applied to habeas proceedings by the Supreme

Court in <u>Mayle</u>.  125 S. Ct. at 2566 ("This case involves two federal prescriptions:  the one-year

limitation period imposed on federal habeas corpus petitioners by the Antiterrorism and Effective

Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d)(1); and the rule that pleading

amendments relate back to the filing date of the original pleading when both the original plea and

the amendment arise out of the same 'conduct, transaction, or occurrence,' Fed. Rule Civ. Proc.

15(c)(2).").

Rule 15(c)(3), which concerns amendments that change the party against whom a

claim is asserted, is not applicable to habeas proceedings because there is only one possible

petitioner and there are habeas statutes and rules that govern the naming of the proper respondent

18

1    and the service of respondents.  Compare Fed. R. Civ. P. 15(c)(3) and Fed. R. Civ. P. 4(m) with

2    Rule 2(a), Fed. R. Governing § 2254 Cases (requiring a petitioner currently in custody under a

3    state-court judgment to name as respondent the state officer who has custody of him) and Rule 4,

4    Fed. R. Governing § 2254 Cases (stating requirements for service of habeas petition and order).

5    See Rule 11, Fed. R. Governing § 2254 Cases; Fed. R. Civ. P. 81(a)(2).

6              Petitioners' reliance on the Advisory Committee Notes to the 1966 amendment to

7    Rule 15(c) is misplaced because, according to those very notes, the 1966 amendment amplified

8    the rule "to state more clearly when an amendment of a pleading changing the party against

9    whom a claim is asserted (including an amendment to correct a misnomer or misdescription of a

10   defendant) shall 'relate back' to the date of the original pleading" and in particular addressed a

11   problem that arose "in certain actions by private parties against officers or agencies of the United

12   States."  The 1966 amendment concerned only Rule 15(c)(3), which is not applicable to habeas

13   petitions, and the advisory committee notes addressed only the amendment of a pleading to

14   change the party against whom a claim or defense is asserted.  Those notes do not support a

15   conclusion that a habeas petitioner's new claims can relate back to the date of a pleading filed by

16   another habeas petitioner in a separate habeas proceeding.  In particular, the final paragraph of

17   the notes, referring to "[t]he relation back of amendments changing plaintiffs," is irrelevant in

18   habeas proceedings in which the only possible "plaintiff" is the state prisoner who is challenging

19   his state court conviction or sentence.  The undersigned rejects petitioners' argument that any of

20   their new claims relate back to claims raised by the other petitioners in their separate cases.

21             Petitioners' reliance on orders relating their cases is also misplaced.  Under the

22   Local Rules of Practice for the United States District Court for the Eastern District of California,

23   the court may assign two or more cases to the same district judge or magistrate judge, or both,

24   when doing so will "effect a substantial savings of judicial effort" and avoid a "substantial

25   duplication of labor."  Local Rule 83-123(a).  As stated in the court's standard order relating

26   cases pursuant to this rule, no consolidation of the cases is effected by their assignment to the

same judge or judges,[2] and each case proceeds as a separate case.  The relating of cases for purposes of judicial economy has no bearing on the relation back of new claims alleged in a party's amended pleadings pursuant to Rule 15(c) of the Federal Rules of Civil Procedure.

The court turns to a comparison of the claims raised in petitioner MacCarlie's original petition and those raised in his amended petition.  The claims alleged in the original petition are as follows:

> Ground 1:  The court's misinstruction regarding the need for the jury to find an intent to kill to convict on the conspiracy charge deprived petitioner of due process and his Sixth Amendment right to jury trial;

> Ground 2:  Petitioner's conviction for conspiracy to commit murder violates due process and the prohibition against ex post facto laws because he was retroactively deprived of instructions on the lesser included offenses of conspiracy to commit second degree murder or manslaughter, and thus of those defenses to conspiracy to commit first degree murder, by a California Supreme Court decision which postdated the offense and which held conspiracy to commit second degree murder or manslaughter does not exist;

> Ground 3:  Petitioner received ineffective assistance of counsel in violation of the Sixth Amendment when counsel failed to request that the trial court give instructions on conspiracy to commit second degree murder and manslaughter;

> Ground 4:  Petitioner's conviction of conspiracy to commit murder violates due process and the prohibition against ex post facto laws because the state Court of Appeal used People v. Cortez, 18 Cal. 4th 1223 (1998), as a basis to reject petitioner's contention on appeal that the trial court erred in refusing to instruct the jury on "heat of passion";

/////

---

[2]   The related case order filed in the Hamby, Fenenbock, and Frazier cases in 1997 specifically stated that "[t]he parties should be aware that relating the cases under Local Rule 83-123 merely has the result that the three (3) actions are assigned to the same judge and magistrate judge; no consolidation of the actions is effected." (Order filed Dec. 24, 1997, in case No. CIV S-97-0164, case No. CIV S-97-1731, and case No. CIV S-97-2196, at 2.)  Likewise, the related case order filed in the Hamby, Fenenbock, Frazier, Bond, and MacCarlie cases in 2001 states that "[t]he parties should be aware that relating these five cases under Local Rule 83-123 merely has the result that the actions are assigned to the same judge; no consolidation of the actions is effected." (Order filed Dec. 12, 2001, in case No. CIV S-97-0164, case No. CIV S-97-1731, case No. CIV S-97-2196, case No. CIV S-99-2150, and case No. CIV S-00-1830, at 2.)

1

   Ground 5:  Petitioner has been deprived of federal constitutional
   due process, his right to trial by jury, and his right to proof beyond

2

   a reasonable doubt, because the verdicts against him were coerced
   and because he was not afforded his state law entitlement to juror

3

   unanimity on the conspiracy count when the trial court took partial
   verdicts before excusing a juror for illness.

4

5       In his amended petition, petitioner MacCarlie alleges his five original claims as

6   Claims 9 through 13.  Respondent does not dispute the timeliness of Claims 9-13, and the

7   undersigned finds that those claims relate back to the claims in the original petition.

8       Petitioner MacCarlie's new Claims 1-8 and 14, the timeliness of which are

9   disputed, are summarized by the court as follows:

10

   Ground 1:  Petitioner's rights to due process, a fair trial, to present
   a defense, to cross-examine witnesses, and to the effective

11

   assistance of counsel under the Fifth, Sixth, and Fourteenth
   Amendments were violated when the prosecution created in its key

12

   witness (Randy Hogrefe), and presented through that witness a
   false memory of how the killing occurred and the trial court

13

   allowed the presentation of that testimony;

14

   Ground 2:  Petitioner's rights to due process, a fair trial, to present
   a defense, to cross-examination, and to counsel under the Fifth,

15

   Sixth, and Fourteenth Amendments were violated by the denial of
   meaningful defense access to key the prosecution witness (Randy

16

   Hogrefe) before and during trial;

17

   Ground 3:  Petitioner's rights to due process, to a fair trial, to
   present a defense, to cross-examine witnesses, and to the effective

18

   assistance of counsel under the Fifth, Sixth, and Fourteenth
   Amendments were violated because the prosecutor committed

19

   misconduct by using unconstitutional and overreaching
   investigatory tactics which resulted in evidence produced at trial or

20

   in the unavailability of evidence for the defense, as follows:

21

   A.  The prosecution team manufactured Randy
   Hogrefe's false memory of the crime; Kartchner

22

   told virtually every witness that he or she was either
   a witness for the prosecution, or a suspect or

23

   defendant; Kartchner often did not tape record
   interviews or take notes, and wrote reports many

24

   months later, which allowed the prosecutor to call
   Kartchner to the stand to impeach witnesses with

25

   his undocumented memories of what the witness
   had said after the witness denied making the

26

   statements attributed to him or her; Kartchner and

the prosecutor destroyed the first written statement by witness Sutton and added names to the second statement, the prosecution deliberately housed three witnesses (Sutton, Thayer, and Jones) together so their stories would become consistent, and these witnesses constantly discussed the case with each other;

B.  The prosecution team destroyed, concealed, and suppressed evidence favorable to the defense; Kartchner intimidated and threatened witnesses, making them unwilling to discuss the facts of the case; Kartchner did not record witness statements in which they gave exculpatory evidence; the prosecution team destroyed Sutton's original handwritten statement and filled in names in his second statement; the prosecution team intimidated Randy Hogrefe, refused to record important interviews with him, worked with child services to create false memories in Randy's mind, and had continuous access to Randy while denying all access to him by the defense;

Ground 4:  Petitioner's due process rights under the Fifth and Fourteenth Amendments were violated when the conspiracy conviction was based on overt acts that, as a matter of law, were not separate from the charged conspiracy agreement;

Ground 5:  Due process and the right to a jury verdict were violated by the trial court's failure to instruct the jury on conspiracy to commit the lesser offenses of assault, battery or mayhem ;

Ground 6:  Petitioner is actually innocent of conspiracy to commit murder;

Ground 7:  Petitioner did not receive the effective assistance of trial counsel in violation of the Sixth and Fourteenth Amendments as follows:

A.  Counsel failed to recognize that a conspiracy conviction cannot be based on overt acts that were not separate from the charged conspiracy agreement;

B.  Counsel failed to adequately investigate and cross-examine witness Sutton;

C.  Counsel failed to consult and present an expert in memory, eyewitnesses, and investigatory/interviewing techniques to testify regarding the manner in which the prosecution and Kartchner intimidated and interviewed witnesses, to show that the testimony of witnesses Hogrefe,

22

Sutton, Thayer, Jones, and Roanhouse was so unreliable as
to raise a reasonable doubt on the charge of
conspiracy to commit murder;

D.  Counsel failed to request instructions on conspiracy to
commit offenses other than murder, such as conspiracy to
assault, batter, or commit mayhem; and

E.  Counsel failed to object to a scripted introduction to the
jury panel and hardship voir dire in the absence of counsel
and petitioner, acquiesced in this procedure, and advised
petitioner to personally waive his right to be present;

Ground 8:  Petitioner was deprived of the effective assistance of
appellate counsel in violation of the Sixth and Fourteenth
Amendments when appointed counsel, assisted by his present
habeas counsel, failed to expand his appointment to include filing a
habeas petition in the California Court of Appeal;

Ground 14:  Petitioner's rights to due process under the Fifth and
Fourteenth Amendments was violated by cumulative error and
prejudice.

Petitioner MacCarlie has not argued that Claims 1-8 relate back to any of the
claims alleged in his own original petition.  Rather, his entire argument in this regard is based
upon the premise that his new claims can be found to relate back to those raised by other
petitioner's in their separate cases.  That premise has been rejected by the undersigned for the
reasons set forth above.  After careful consideration of petitioner's original and amended
petitions, as well as the parties' arguments, the undersigned finds that Claims 1-8 do not share a
common core of operative facts with any of petitioner's five original claims and therefore do not
relate back to the original petition.  As set forth above, petitioner's original five claims
challenged only the trial court's failure to give instructions regarding intent to kill, heat of
passion and a lesser included offense instruction on conspiracy to commit second degree murder
or manslaughter; ineffective assistance of trial counsel for failure to request instructions on
conspiracy to commit second degree murder and manslaughter and coercion of the verdict as well
as error in the taking of partial verdicts.  On the other hand, petitioner MacCarlie's new claims 1-
8 and 14 present a broad ranging challenge to his judgment of conviction.  The grounds set forth

1   in these new claims include that petitioner was: convicted of the conspiracy based upon on false

2   evidence tainted by prosecutorial and police misconduct, denied access to witness Hogrefe,

3   convicted of conspiracy based on overt acts not separate from the conspiracy as a matter of law,

4   denied the effective assistance of trial counsel in five specific instances including failing to

5   request instructions on conspiracy to assault, batter or commit mayhem; denied the effective

6   assistance of appellate counsel; and convicted despite being actually innocent of conspiracy to

7   commit murder.   Petitioner MacCarlie's original petition does not recite any of the facts needed

8   to support these new claims.  Thus, the original claims and new claims are based upon

9   completely separate sets of facts.

10          Petitioner's Claim 14, alleging cumulative error, relates back to the original

11   petition to the extent that petitioner argues the prejudicial effect of the five claims now alleged as

12   Claims 9-13.  If respondent's motion to dismiss is granted, petitioner should be permitted to

13   amend his petition, if appropriate, to allege a cumulative error claim grounded on the prejudicial

14   effect of the errors alleged in his five original claims.  So limited, the new claim of cumulative

15   error would arise from the same common core of operative facts alleged in the original petition

16   and would relate back to that pleading.  See Woodward v. Williams, 263 F.3d 1135, 1142 (10th

17   Cir. 2001) (upholding relation back of a claim that was based on the same facts as the original

18   pleading but clarified or amplified the claim or theory), cited with approval in Mayle, 125 S. Ct.

19   at 2574 n.7.

20   III.  Equitable Tolling

21          The Ninth Circuit Court of Appeals determined in 1997 that the one-year period

22   of limitation contained in 28 U.S.C. § 2244(d) is a statute of limitations subject to tolling.

23   Calderon v. United States Dist. Court (Beeler), 128 F.3d 1283, 1288 (9th Cir. 1997), overruled in

24   part on other grounds by Calderon v. United States Dist. Court (Kelly), 163 F.3d 530 (9th Cir.

25   1998).  The court cautioned that "[e]quitable tolling will not be available in most cases, as

26   extensions of time will only be granted if 'extraordinary circumstances' beyond a prisoner's

control make it impossible to file a petition on time." 128 F.3d at 1288-89 (citing <u>Alvarez-Machain v. United States</u>, 107 F.3d 696, 701 (9th Cir. 1997)).  The availability of equitable tolling of the AEDPA statute of limitations must be limited because courts are expected to "take seriously Congress's desire to accelerate the federal habeas process." 128 F.3d at 1289.  <u>See</u> <u>Corjasso v. Ayers</u>, 278 F.3d 874, 877 (9th Cir. 2002) (describing the Ninth Circuit's standard as setting a "high hurdle" to the application of equitable tolling).

Even where extraordinary circumstances are shown, equitable tolling will not be available unless the petitioner diligently pursued his claims.  <u>Calderon</u>, 128 F.3d at 1289.  It is only when external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely habeas petition that equitable tolling may be appropriate.  <u>Miles v. Prunty</u>, 187 F.3d 1104, 1107 (9th Cir. 1999).  The petitioner bears the burden of demonstrating grounds for equitable tolling.  <u>Espinoza-Matthews v. California</u>, 432 F.3d 1021, 1026 (9th Cir. 2005); <u>Miranda v. Castro</u>, 292 F.3d 1063, 1065 (9th Cir. 2002).

Since recognizing the availability of equitable tolling of the AEDPA context in 1997, the Ninth Circuit Court of Appeals has addressed the issue many times.  For the most part, and most often in unpublished decisions, the appellate court has affirmed district court decisions denying equitable tolling.  Typical decisions affirming the denial of equitable tolling include <u>Miranda v. Castro</u>, 292 F.3d 1063, 1067-68 (9th Cir. 2002), in which the court affirmed the district court's denial of equitable tolling where the pro se petitioner filed his petition untimely on the basis of erroneous information provided by the attorney appointed to represent him on direct appeal, and <u>Frye v. Hickman</u>, 273 F.3d 1144, 1146 (9th Cir. 2001), in which the court affirmed the district court's denial of equitable tolling where the petitioner's attorney miscalculated the limitations period.  In <u>Brambles v. Duncan</u>, 412 F.3d 1066, 1070-71 (9th Cir.), <u>cert.</u> <u>denied</u>, ___ U.S. ___, 126 S. Ct. 485 (2005), the Ninth Circuit recently affirmed the district court's denial of equitable tolling where the petitioner filed an untimely petition after he had previously filed a timely mixed petition but, pursuant to district court instructions that were not

affirmatively misleading, chose to dismiss the entire petition and return to state court to exhaust additional claims.  See also Raspberry v. Garcia, 448 F.3d 1150, 1153-54 (9th Cir. 2006) (affirming the denial of equitable tolling because neither the district court's failure to advise the petitioner of the right to amend his petition to include unexhausted claims nor petitioner's inability to correctly calculate the limitations period were extraordinary circumstances warranting equitable tolling).

Due to the highly fact-dependent nature of the grounds for equitable tolling, the Ninth Circuit has occasionally remanded a case for further factual development of an issue such as a petitioner's mental illness, a petitioner's access to his legal materials, and the adequacy of a particular prison law library at a specific time.  See, e.g., Mendoza v. Carey, 449 F.3d 1065, 1069-71 (9th Cir. 2006) (remanding for appropriate development of the record on the issue of whether petitioner's inability to obtain Spanish-language materials or procure translation assistance was an extraordinary circumstance preventing him from filing a timely habeas petition); Laws v. Lamarque, 351 F.3d 919, 922-24 (9th Cir. 2003) (remanding for development of the record or an evidentiary hearing on the issue of whether the petitioner's mental illness prevented him from timely filing his habeas petition); Lott v. Mueller, 304 F.3d 918, 923 (9th Cir. 2002) (remanding for development of the record related to the availability of equitable tolling where the petition was filed, at most, twenty days late, and the pro se petitioner alleged in his traverse that he was denied access to his legal files for eighty-two days during the one-year period of limitation due to two temporary transfers for court proceedings in an unrelated civil court matter); Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th Cir. 2000) (en banc) (remanding for further factual development related to the availability of equitable tolling or a finding of a state-caused impediment under § 2244(d)(1)(B) where the petitioner alleged that the prison law library contained no legal materials describing the AEDPA and its one-year limitations period until June of 1998).

/////

The Ninth Circuit has affirmed or mandated equitable tolling in those relatively few cases where a diligent petitioner was unable to file a timely petition due to a significant delay caused by an external force such as the district court, prison officials, or, but rarely, the petitioner's own habeas counsel.  See Espinoza-Matthews v. California, 432 F.3d 1021 (9th Cir. 2005) (applying equitable tolling for the period of almost eleven months during which the pro se petitioner was housed in administrative segregation for his own protection and was denied access to his legal materials throughout that time despite his diligent efforts to obtain access); Spitsyn v. Moore, 345 F.3d 796 (9th Cir. 2003) (finding the misconduct of the petitioner's attorney sufficiently egregious to justify equitable tolling where the attorney was hired nearly a full year in advance of the deadline for filing a federal petition but did not prepare and file the petition despite the fact that the petitioner and his mother contacted the attorney numerous times seeking action and where, despite a request for return of the file, the attorney retained the file for the duration of the limitations period and two months beyond); Smith v. Ratelle, 323 F.3d 813 (9th Cir. 2003) (applying equitable tolling where the district court had previously dismissed the pro se petitioner's timely habeas petition without giving him an opportunity to file an amended petition as an alternative to dismissal); Stillman v. LaMarque, 319 F.3d 1199 (9th Cir. 2003) (applying equitable tolling where the prison litigation coordinator promised the petitioner's attorney that he would obtain the prisoner's signature in time for filing the petition but broke his promise and caused the petition to be late); Corjasso v. Ayers, 278 F.3d 874 (9th Cir. 2002) (applying equitable tolling where the district court's initial dismissal of a timely petition was improper and the court's lengthy delay in ruling that the amended petition was unexhausted consumed 258 days of the pro se petitioner's one-year period of limitation and caused the petitioner to lose time that would otherwise have been available for exhausting state court remedies); Miles v. Prunty, 187 F.3d 1104 (9th Cir. 1999) (applying equitable tolling where prison officials delayed the pro se petitioner's request that a check be drawn on his prison trust account for payment of the filing fee); Calderon (Kelly), 163 F.3d 530 (applying equitable tolling in a death penalty case because

27

of an earlier court-ordered stay of the habeas proceedings, the petitioner's alleged mental

incompetency, and the court's mistaken dismissal of the timely habeas proceedings); Calderon

(Beeler), 128 F.3d 1283 (holding in a death penalty case that the withdrawal of court-appointed

habeas counsel, who moved out of state and whose work product was not usable by replacement

counsel, qualified as an extraordinary circumstance beyond petitioner's control that justified

tolling the statute of limitations).

     Although the Supreme Court has recently "framed the equitable tolling standard in

less absolute terms" than the Ninth Circuit's well established test of "impossible to file a petition

on time," the Ninth Circuit has not yet decided whether the Supreme Court's formulation "has

lowered the bar somewhat." Espinoza-Matthews, 432 F.3d at 1026 n.5 (9th Cir. 2005) (citing

Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). In Pace, the Court noted that it has "never

squarely addressed the question whether equitable tolling is applicable to AEDPA's statute of

limitations." 544 U.S. at 418 n.8. The Court found it unnecessary to reach the question in Pace

because the petitioner's failure to establish diligence would preclude the application of equitable

tolling to his untimely petition. Id. at 418-19. The Supreme Court observed that "[g]enerally, a

litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has

been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his

way." 544 U.S. at 418 (citing Irwin v. Department of Veterans Affairs, 498 U.S. 89, 96 (1990)).

See also Raspberry, 448 F.3d at 1153.

     In the five related cases before this court, the petitioners rely in part on Justice

Stevens's concurrence in Duncan v. Walker, 533 U.S. 182 (2001) (Stevens, J., concurring in part

and concurring in the judgment). Justice Stevens, joined by Justice Souter, agreed with the

Court's decision that the statutory tolling provision contained in § 2244(d)(2) authorizes tolling

while a petitioner is pursuing state, but not federal, post-conviction remedies. Id. Citing the

general equitable powers of federal courts, Justice Stevens observed that those courts may deem

a limitations period tolled as a matter of equity and "might very well conclude that tolling is

1   appropriate based on the reasonable belief that Congress could not have intended to bar habeas

2   review for petitioners who invoke the court's jurisdiction within the 1-year interval prescribed by

3   AEDPA." Id. at 182-83.  He speculated that, just as the federal courts of appeals uniformly

4   created a one-year grace period running from the date of AEDPA's enactment for all prisoners

5   whose state convictions became final prior to AEDPA, "federal courts may well conclude that

6   Congress simply overlooked the class of petitioners whose timely filed habeas petitions remain

7   pending in district court past the limitations period, only to be dismissed after the court belatedly

8   realizes that one or more claims have not been exhausted." Id. at 183-84.  However, equitable

9   tolling was not the only remedy suggested by Justice Stevens for the class of petitioners he

10  described.  He also found "no reason why a district court should not retain jurisdiction over a

11  meritorious claim and stay further proceedings pending the complete exhaustion of state

12  remedies," especially when failure to do so would foreclose federal review of a meritorious claim

13  because of the limitations period.  Id. at 183.  See also id. at 182 (Souter, J. concurring) ("I have

14  joined Justice Stevens's separate opinion pointing out that nothing bars a district court from

15  retaining jurisdiction pending complete exhaustion of state remedies, and that a claim for

16  equitable tolling could present a serious issue on facts different from those before us.").

17          The Ninth Circuit has not hesitated to use its equitable powers to protect

18  petitioners in the class described by Justice Stevens.  A stay-and-abeyance procedure was

19  approved by the Ninth Circuit soon after AEDPA was enacted.  See Calderon v. United States

20  Dist. Court (Thomas), 144 F.3d 618, 620 (9th Cir. 1998) (endorsing a procedure permitting

21  withdrawal of unexhausted claims and abeyance); Calderon v. United States Dist. Court (Taylor),

22  134 F.3d 981, 987-88 (9th Cir. 1998) (recognizing the district court's authority to allow a

23  petitioner to amend a mixed petition to delete unexhausted claims and then hold the completely

24  exhausted petition in abeyance pending exhaustion); Greenawalt v. Stewart, 105 F.3d 1268, 1274

25  (9th Cir. 1997) (recognizing that the district court has discretion to stay a fully exhausted

26  petition).  See also Fetterly v. Paskett, 997 F.2d 1295, 1301-02 (9th Cir. 1993) (holding in a

1    pre-AEDPA case that the district court abused its discretion in denying a capital habeas

2    petitioner's motion to stay a petition containing only exhausted claims pending exhaustion of

3    additional claims in state court).  The Ninth Circuit has also applied the alternate remedy of

4    equitable tolling where a diligent petitioner was unable to file a timely petition due to an

5    improper dismissal or other mishandling and consequent delay caused by the district court.  See

6    Smith, 323 F.3d 813; Corjasso, 278 F.3d 874; Calderon (Kelly), 163 F.3d 530.  Moreover, in

7    applying equitable tolling in Corjasso, decided after Duncan, the court commented that its

8    decision to toll the statute "during part of the pendency of [Corjasso's first federal habeas case] is

9    not contrary to the rule in Duncan, for we do not hold that equitable tolling of the statute is

10   appropriate for the entire time Corjasso's petitioner remained in federal court" but "only during

11   the delay caused by the extraordinary circumstances beyond Corjasso's control."  278 F.3d at

12   879.

13          The petitioners in the five related cases before this court do not fall within the

14   class of petitioners described by Justice Stevens in his concurring opinion in Duncan.  Here, the

15   five petitioners filed timely habeas petitions raising only exhausted claims.  Their petitions were

16   not dismissed, and all five petitioners are proceeding in their original federal habeas actions.

17   These petitioners did not invoke the court's jurisdiction over meritorious claims within the one-

18   year interval prescribed by AEDPA, only to find habeas review of those claims forever barred

19   due to the court's failure to retain jurisdiction over the timely-filed claims while the petitioners

20   returned to state court to exhaust additional claims.  Nor are these petitioners and the petitioner in

21   Corjasso similarly situated.  Corjasso, 278 F.3d at 878 (applying equitable tolling where the

22   district court's initial dismissal of a timely petition was improper and the court's lengthy delay in

23   ruling that the amended petition was unexhausted consumed 258 days of the pro se petitioner's

24   one-year period of limitation and caused the petitioner to lose time that would otherwise have

25   been available for exhausting state court remedies).

26   /////

Petitioner MacCarlie has asserted a general joinder in the arguments of other petitioners, who have argued that the complexity of the five cases, the respondents' lack of objection to continuances requested by petitioners, and the necessity of filing a properly pled and supported exhaustion petition made it impossible for them to file all of their claims in federal court prior to the expiration of the statute of limitations.  In this case, however, petitioner MacCarlie's counsel was already familiar with this case because she assisted in his appeal and prepared his timely federal habeas petition.

The undersigned finds that equitable tolling should be applied during a portion of these federal proceedings, but, as the Ninth Circuit held in Corjasso, "only during the delay caused by the extraordinary circumstances beyond [petitioner's] control."  278 F.3d at 879. Petitioner MacCarlie was not present during the separate trials of his co-defendants, had no access to the transcripts of the trials that preceded and followed his own, was in custody during pretrial litigation, and was incarcerated after sentencing.  The California Supreme Court denied review on direct appeal on June 30, 1999, and on August 23, 2000, petitioner filed a timely federal habeas petition prepared by counsel who assisted him with his appeal and who represents him in his federal habeas proceedings.  (See Pet'r MacCarlie's Mot. for Appointment of Counsel filed Aug. 23, 2000, at 3.)  Petitioner MacCarlie's case was related to petitioner Bond's and was reassigned to the undersigned on December 27, 2000.  The Federal Defender was appointed to represent petitioner MacCarlie on January 4, 2001, three months after the statute of limitations expired on September 28, 2000, under § 2244(d)(1)(A).  When counsel who assisted in petitioner MacCarlie's appeal and prepared his federal habeas petition was substituted for the Federal Defender on January 23, 2001, it was anticipated that her knowledge of the record would "save a considerable amount of time and resources."  (See Pet'r MacCarlie's Mot. for Substitution of Counsel filed Jan. 19, 2001, at 2.)  Counsel was already thoroughly familiar with the record of the second trial and had learned prior to February 22, 2001, that the records of the other trials could be made available to her by counsel for petitioner Frazier at the Office of the Federal

31

1    Defender.  (See Pet'r MacCarlie's Status Report filed Feb. 23, 2001, at 1-2.)  Because counsel for

2    petitioners Hamby, Fenenbock, and Frazier had compiled a substantially complete state court

3    record for all three trials by August 31, 1998, petitioner MacCarlie's counsel had access to the

4    complete record as well as her own record of petitioner MacCarlie's trial by February 22, 2001.

5            The undersigned finds that any delay caused by extraordinary circumstances

6    beyond petitioner MacCarlie's control ended by February 22, 2001.  While the state court record

7    is voluminous, counsel for petitioner MacCarlie was familiar with a substantial part of that

8    record prior to her appointment in this case and has not shown that it was impossible to identify

9    new claims and seek a stay within one year after February 22, 2001.  Equitable tolling from

10   September 28, 1999, when petitioner MacCarlie's judgment became final, to February 22, 2001,

11   when extraordinary circumstances beyond petitioner's control ceased to exist, does not render

12   petitioner's amended federal petition timely.  The one-year period of limitation began to run on

13   February 23, 2001, and expired on February 22, 2002.  The state exhaustion petition filed by

14   petitioner MacCarlie on July 19, 2002, was filed almost five months too late to toll the statute

15   under § 2244(d)(2), and the amended federal petition filed in 2003 was filed approximately a

16   year and a half late.

17           Other arguments advanced by the petitioners in favor of additional equitable

18   tolling are unpersuasive.  It is undisputed that respondents' counsel stipulated to continuances of

19   status conferences up to October 2001 and did not object to continuances of various deadlines

20   and hearing dates.  However, the petitioners have not demonstrated that the respondents waived

21   the statute of limitations, and there is no evidence that petitioners were affirmatively misled by

22   respondents or by the court with regard to the statute of limitations.[3]  The need to prepare and file

23   /////

24

25           [3] Indeed, at least as early as April 2000 counsel for respondent was suggesting in opposition
     to a discovery motion that any new claims presented in an amended petition may be procedurally
26   barred.

1  state exhaustion petitions was not an external force that made it impossible for petitioner

2  MacCarlie to prepare and file his state exhaustion petition within a year after April 4, 2000.

3        The petitioner in this case is not entitled to equitable tolling for a period of time

4  sufficient to render his amended petition timely.

5  IV.  <u>Actual Innocence</u>

6        A habeas petitioner's "otherwise-barred claims [may be] considered on the merits

7  . . . if his claim of actual innocence is sufficient to bring him within the 'narrow class of cases . . .

8  implicating a fundamental miscarriage of justice.'" <u>Carriger v. Stewart</u>, 132 F.3d 463, 477 (9th

9  Cir. 1997) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 315 (1995)).  The petitioner's claim of actual

10  innocence must be supported "with new reliable evidence–whether it be exculpatory scientific

11  evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented

12  at trial." <u>Schlup</u>, 513 U.S. at 324.  The petitioner "must show that, in light of all the evidence,

13  including evidence not introduced at trial, 'it is more likely than not that no reasonable juror

14  would have found petitioner guilty beyond a reasonable doubt.'" <u>Majoy v. Roe</u>, 296 F.3d 770,

15  776 (9th Cir. 2002) (quoting <u>Schlup</u>, 513 U.S. at 327).  <u>See also</u> <u>Griffin v. Johnson</u>, 350 F.3d

16  956, 962-63 (9th Cir. 2003); <u>Sistrunk v. Armenakis</u>, 292 F.3d 669, 672-73 (9th Cir. 2002) (en

17  banc); <u>Gandarela v. Johnson</u>, 286 F.3d 1080, 1086 (9th Cir. 2002).  Where a habeas petitioner

18  alleges actual innocence, the federal court must first consider all alternative grounds for relief

19  from default that might obviate the need to reach the actual innocence question.  <u>Dretke v. Haley</u>,

20  541 U.S. 386, 388-89 (2004).

21        Having considered all alternative grounds for relief from default above, the

22  undersigned turns to petitioner MacCarlie's claim of actual innocence.  In order to decide

23  whether petitioner's actual innocence claim brings his entire amended petition within an

24  exception to the AEDPA statute of limitations, the court must determine whether petitioner's

25  claim of actual innocence is supported by new reliable evidence that would have affirmatively

26  proved his actual innocence had that evidence been presented at trial.  The undersigned has

1   carefully considered the claim of actual innocence as alleged in petitioner's first amended

2   petition as well as all arguments concerning the evidence presented at petitioner MacCarlie's trial

3   and the new evidence cited by petitioner as evidence of actual innocence.  (See Pet'r MacCarlie's

4   Am. Pet. at 7-14 & 31-32; Pet'r MacCarlie's Opp'n to Resp'ts' Second Mot. to Dismiss filed

5   Aug. 23, 2005, at 7-9; Resp't's Reply to Pet'r MacCarlie's Opp'n filed Sept. 2, 2005, at 3-5.)

6   Petitioner MacCarlie's new evidence, consisting primarily of pretrial statements allegedly made

7   by co-defendant Dodds and witness Michael Sutton to a defense investigator and statements

8   allegedly made by Dodds to an investigator for the Federal Defender's Office in November 2001,

9   falls far short of presenting "'evidence of innocence so strong that a court cannot have

10  confidence in the outcome of the trial.'"  Sistrunk, 292 F.3d at 673 (quoting Schlup, 513 U.S. at

11  316).

12          In this regard, petitioner has not submitted any declaration, or even a report of

13  interview, in support of his claim that Dodds made statements in 2001 which would have

14  exculpated petitioner of conspiracy to commit murder.  In his 2002 affidavit Dodds recounts a

15  version of the events that does not constitute strong evidence of petitioner's innocence.  In that

16  declaration Dodds speaks of a confrontation between petitioner MacCarlie and Summar on the

17  date of the killing during which petitioner punched the victim several times in the face.  Dodds

18  merely reports that he then left the scene.  Of course, Dodds was a co-defendant of petitioner and

19  was acquitted of the murder.  Even if believed, his 2002 declaration does not qualify as strong

20  evidence of petitioner MacCarlie's innocence.  Likewise, the statement given by Sutton in which

21  he characterized the killing of Summar as "no big conspiracy" but rather as something that

22  "apparently" took place "in the heat of the moment" cannot be fairly characterized as compelling

23  new evidence of MacCarlie's innocence, so strong that a court cannot have confidence in the

24  verdict.  This statement by Sutton was offered into evidence by the defense at the trial of Hamby,

25  Fenenbock and Frazier, a trial that preceded petitioner MacCarlie's trial.  The prosecution's

26  /////

1   objection to the evidence was sustained with the trial court finding that it amounted to nothing

2   more than Sutton's opinion.

3           Given the absence of new reliable evidence, petitioner MacCarlie does not have a

4   colorable claim of actual innocence pursuant to Schlup.  Due to the inadequacy of petitioner's

5   supporting evidence, his claim of actual innocence fails to bring him within the "'narrow class of

6   cases . . . implicating a fundamental miscarriage of justice.'"  Carriger, 132 F.3d at 477 (quoting

7   Schlup, 513 U.S. at 315).  Petitioner MacCarlie's amended petition is not rendered timely by his

8   claim of actual innocence.

9                     CONCLUSION

10         IT IS RECOMMENDED that respondent's August 4, 2005 motion to dismiss be

11   granted with leave to file a second amended petition alleging the claims alleged in petitioner's

12   first amended petition as Claims 9-13 and, if appropriate, a claim of cumulative error grounded

13   solely on the prejudicial effect of the errors alleged in those five claims.

14         These findings and recommendations will be submitted to the United States

15   District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within

16   twenty days after being served with these findings and recommendations, any party may file and

17   serve written objections with the court.  A document containing objections should be titled

18   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to objections

19   shall be filed and served within ten days after service of the objections.  The parties are advised

20   that failure to file objections within the specified time may, under certain circumstances, waive

21   the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

22   1991).

23   DATED: September 11, 2006.

24

25                     _____

26   DAD:13                DALE A. DROZD
       macc1830.mtd2       UNITED STATES MAGISTRATE JUDGE